

U.S. BANKRUPTCY COURT

NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed August 24, 2011**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| AMERISOUTH V, L.P., | § | Case No. 10-38592-sgj-11 |
| | § | |
| Debtor. | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING VALUATION

On July 22 and 27, 2011, the Court held a hearing on the *Motion Pursuant to Fed. R. Bankr. P. 3012 for Valuation of Collateral Pursuant to Section 506 of the Bankruptcy Code, and Pursuant to Fed. R. Bankr. P. 9014 to Make Fed. R. Civ. P. 26(a) Applicable to Valuation Hearing* [Docket No. 92] (the "Motion") filed by AmeriSouth V, L.P., (the "Debtor"). The Court considered the pleadings filed by the Debtor and Wells Fargo Bank, N.A., as Trustee for the registered holders of the Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass Through Certificates, Series 2000-CK1 (the "Lender"), the evidence offered at the hearing (whether by witness or exhibit), and the *Stipulation of Facts and Admissibility of Exhibits* [Docket No. 125]. On July 29, 2011, the Court issued its oral ruling regarding the Motion in which it determined the value of the Debtor's multi-family residential real property

commonly known as Park Creek Manor Apartments located in the Winnetka Heights neighborhood of Dallas, Texas (the "Property"). The following are the Court's findings of fact and conclusions of law in connection with the hearing on the Motion:[1]

## FINDINGS OF FACT

A.      The Debtor filed the Motion pursuant to section 506(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3012 of the Federal Rules of Bankruptcy Procedures. The Court has jurisdiction over this matter pursuant to section 1334 of title 28 of the United States Code. This matter is a core proceeding pursuant to section 157(b) of title 28 of the United States Code.

B.      The Property is a 322-unit apartment complex located at 2520 Coombs Creek, near Illinois Avenue and Westmoreland Road in the Oak Cliff section of Dallas, Texas. The Property was built in either 1964 or 1967 and offers "all bills paid" to its tenants.

C.      The "all bills paid" aspect of the Property is a marketing advantage when targeting low-income families. As of the date of the hearing on the Motion, the Property was approximately 96% occupied, and it has been over 80% occupied since 2001. Among the appealing aspects of the Property relating to its location, which seem to bode well for keeping occupancy high are (i) the shopping complex adjacent to the Property, which has a Fiesta grocery store built in 2006 or 2007, restaurants, a check cashing store, a cell phone store, a gas station, and other businesses; (ii) a nearby Dallas Area Rapid Transit ("DART") rail line station, DART

---

[1] To the extent that any of the findings of fact should be construed as a conclusion of law, it shall be construed as such. To the extent that any of the conclusions of law should be construed as a finding of fact, it shall be construed as such. All oral findings of fact and conclusions of law entered by the Court at the hearing on July 29, 2011 are incorporated herein.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING VALUATION**                                        Page 2
09005-0177/LEGAL21448966. 1
09005-0177/LEGAL21448966.3

bus stop, park, and elementary school; (iii) proximity to Mountain View Community College; and (iv) proximity to a middle school that is under construction.

D. The Property is in need of some repair and maintenance. For example, the Property has rotting wood in various places, needs exterior painting, needs new roofs on several buildings, has potholes in the parking areas, has an HVAC system that is somewhat antiquated, and has various other items that need to be addressed. Notably, the Debtor has recently undertaken significant work relating to necessary repair and maintenance. Specifically, the Debtor has caused seven of the buildings' roofs to be replaced, partially painted the exterior of some of the buildings, repaired some of the fences, and made chiller repairs. The cost of the remaining and necessary capital improvements is $300,000.

E. The Debtor had built up approximately $350,000 in a capital improvements reserve account prepetition (which was held by the Lender), which the Debtor has not been able to access since 2007 because of various disagreements between the Debtor and the Lender regarding access requirements. The capital improvements reserve was eventually partially applied by the Lender to the Debtor's loan, pre-petition.

F. The Property fills a niche market with regard to low-income families who cannot qualify to buy a home and cannot afford more expensive rental housing. The Property has a sense of community; it is family-oriented, mostly Hispanic, with a large number of families with stay-at-home mothers. The Property has high traffic for potential new tenants. The Property has relatively small turnover of about ten units per month. It is not uncommon for tenants to stay four or more years (30-40% have been there for such a time frame).

G. The Property has low incidences of crime, possibly because of the motel-style, clean sight lines that allow significant visibility within the Property and the number of stay-at-home mothers who live at the Property.

H. There are no pending City of Dallas code enforcement actions or violations.

I. The same ownership group has owned the Property since 1999 and Karen Ojeda has been its property manager since 2006.

J. There are no new apartments planned to be built in the area. Despite needed repairs and maintenance, the Property fills a housing need in the community.

K. The Property seems to be an excellent source of cash flow, at $205,000 per month recently, up from the beginning of this case. The Property appears to have several more years of life in it, with the lowest expected economic life being estimated at 15 years, while other experts stated the expected economic life was 25 to 30 years.

L. The appropriate capitalization rate for purposes of the income capitalization approach is 9.4%.

M. For purposes of determining the net operating income, the gross rental revenue is $2,436,000 per year, other revenue is $72,000 per year, for a total of $2,508,000. Vacancy and collection loss is $194,880 per year, and expenses are $1,617,804 per year (using a $96,600 or $300 per unit replacement reserve). As a result, the appropriate net operating income under the income capitalization approach is $695,316 per year.

## CONCLUSIONS OF LAW

1. The income capitalization approach is the most appropriate valuation methodology with regard to the Property in accordance with Section 506(a) of the Bankruptcy Code.

2. Dividing the net operating income by the capitalization rate derives a market value of $7,396,978.72 using the income capitalization approach.

3. After deducting the cost of the remaining necessary capital improvements, the Property has a value of $7,096,978.72.

Therefore, the Court determines that the Property has a value of $7,096,978.72.

### ### END OF ORDER ###

**AGREED AS TO FORM BY:**

E. P. Keiffer (SBN 11181700)
Shane A. Lynch (SBN 24065656)
**WRIGHT GINSBERG BRUSILOW P.C.**
1401 Elm Street, Suite 4750
Dallas, TX 75202
(214) 651-6500
(214) 744-2615 fax
pkeiffer@wgblawfirm.com

**ATTORNEYS FOR THE DEBTOR**

**AND**

Richard H. London, Texas Bar No. #24032678
**PERKINS COIE LLP**
2001 Ross Avenue, Suite 4225
Dallas, TX 75201
Telephone: 214.965.7702
Facsimile: 214.965.7752
RLondon@perkinscoie.com

**ATTORNEYS FOR THE LENDER**